IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| DANNY CRAIG ALEXANDER and ) | Case No. 12-40408-jwv13 |
| LYNN MARIE ALEXANDER, ) | |
| ) | |
| Debtors. ) | |

## MEMORANDUM ORDER DENYING CONFIRMATION
## OF THE DEBTORS' CHAPTER 13 PLAN

Four days before filing their Chapter 13 bankruptcy petition, the Debtors obtained a $513 loan secured by one of their cars. Based on this "car loan," the Debtors now maintain that they are entitled to take a $486.55 a month vehicle ownership deduction in the calculation of their disposable income under 11 U.S.C. § 1325(b). With this deduction, the Debtors' Form B22C shows that they have no disposable income;[1] accordingly, their First Amended Plan proposes to pay nothing to their unsecured creditors. Absent this deduction, these above-median income Debtors would have to pay approximately $11,758 to their unsecured creditors over the life of the plan.

The Chapter 13 Trustee moved to deny confirmation of the First Amended Plan on three grounds: 1) that the Plan incorporating this vehicle ownership deduction has not been filed in good faith in violation of 11 U.S.C. § 1325(a)(3); 2) that the Debtors' Chapter 13 bankruptcy petition was not filed in good faith in violation of § 1325(a)(7); and 3) that the Plan fails to devote all of the Debtors' disposable income toward the repayment of their unsecured creditors in violation of §1325(b).  For the reasons that follow, the Court will grant the Trustee's Motion to deny confirmation of the First Amended Plan on the basis of §§ 1325(a)(3) and (b); the facts do not support a finding that the petition was filed in bad faith.

**FACTUAL BACKGROUND**

The Court gleans the following facts from the pleadings and the Trustee's and Debtor's counsel's testimonial "proffers."[2]

The Debtors, Danny and Mary Alexander, received their pre-bankruptcy credit counseling on January 27, 2012. A week later, on February 3, Danny obtained a $513.50 loan, secured by his 2004 Toyota Tacoma, from creditor "Quick Cash." There are no other liens against this vehicle. The Debtors filed their Chapter 13 bankruptcy petition four days later, on February 7, 2012.

---

[1] Form B22C is the official form used to calculate a Chapter 13 debtor's commitment period and disposable income.
[2] The Court prefers actual testimony over testimonial proffers by counsel.

According to the Debtors' Schedule B, as of the date of filing the Debtors had $300 in cash and savings and checking accounts with a combined balance of $1,225.[3] The Debtors own two cars: the 2004 Toyota Tacoma encumbered by the Quick Cash lien and a 1998 Pontiac Sunfire. Both cars have over 130,000 miles on them and supposedly are in need of repairs.

The Debtors' income exceeds the median income for a Missouri family of the same size. According to Amended Schedules I and J filed on April 26, 2012, the Debtors have monthly income of $5,117.56 and monthly expenses of $3,800, resulting in a $1,317.56 surplus. Their Amended Form B22C (filed on the same date), however, shows that the Debtors have "negative" disposable income of $290.57. As noted above, this figure was calculated with a $486.55 vehicle ownership deduction on Line 28 of the Form. Disallowing that expense would result in a positive disposable income of approximately $195.98.[4] The Debtors' First Amended Chapter 13 Plan proposes a 0% dividend to non-priority unsecured creditors based on the Debtors' Amended Form B22C.

On June 25, 2012, the Court held a hearing on the Trustee's Motion to Deny Confirmation of the Debtors' First Amended Plan. The Debtors did not testify at the hearing; instead, Debtors' counsel offered several explanations for the $513 loan obtained on the eve of bankruptcy and for the subsequent use of that loan to justify a vehicle ownership expense. Debtors' counsel explained that the loan was used pay a portion of his legal fees, and that the Debtors borrowed the money instead of using their liquid assets (cash and bank deposits) because they wanted to leave a cushion for unexpected medical expenses and anticipated auto repairs.

With regard to the vehicle ownership deduction, Debtors' counsel acknowledged that the loan was not used to purchase or lease the vehicle; rather, he explained that claiming the expense was the only way the Debtors could afford to maintain or replace their aging vehicles in light of prior rulings in this District that debtors aren't entitled to a $200 "older vehicle" expense deduction.[5]

The Court took the matter under advisement at the conclusion of the hearing.

## DISCUSSION

The Court's determination that the Debtors' plan has not been filed in good faith is predicated on the Court's conclusion that the loan at issue (*i.e.*, a loan taken out for a purpose

---

[3] According to Schedule B, the Debtors also have $135,061 in a retirement savings account, $685.42 in a 401k, and $625 in Marriott stock.

[4] The figure is approximate because the Trustee's fees would have to be recalculated based on the adjusted plan payment.

[5] *See In re Schultz*, 463 B.R. 492, 495-96 (Bankr. W.D. Mo. 2011) (Dow, J.) (refusing to permit a $200 deduction from disposable income for expenses related to older vehicles).

2

unrelated to the ownership or operation of a vehicle) is not a valid vehicle ownership expense under § 1325(b). So that is where the analysis begins.

### A.    The Plan violates § 1325(b).

Section 1325(b)(1) of the Bankruptcy Code provides that upon objection by the trustee or the holder of an allowed, unsecured claim, a plan may not be confirmed unless the debtor pays all unsecured claims in full or the plan proposes to pay all of the debtor's projected disposable income for the applicable commitment period to unsecured creditors. Because the Alexanders are above-median income debtors, their disposable income is calculated in accordance with § 1325(b)(3), which incorporates the provisions of § 707(b)(2). That provision, in turn, incorporates the standards promulgated by the Internal Revenue Service for assessing the ability of delinquent taxpayers to pay taxes owed to the government:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides. . . .[6]

Expense deductions for ownership expenses are determined by reference to the Local Standards.[7] The nationwide allowance for ownership expenses at the time the Debtors filed their bankruptcy petition was $496. In addition to these standards, the I.R.S. has published a manual ("Manual") which contains guidance for its agents in interpreting and applying the standards.

The Court has found three references to vehicle ownership expenses in the Manual:[8] Section 5.15.1.7, entitled "Allowable Expense Overview," states, "The transportation standards consist of nationwide figures for *loan or lease* payments referred to as ownership costs." Section 5.15.1.9, entitled "Local Standards," refers to a "vehicle payment (*lease or purchase*)." And, most specifically, § 5.8.5.20.3, entitled "Allowable Expenses - Transportation Expenses," states: "Ownership Expenses – Expenses are allowed for *purchase or lease* of a vehicle."

Based on these provisions, the Court concludes that the ownership expenses provided for in the Local Standards, as incorporated into § 1325(b) (via §707(b)(2)) refer to expenses related to the purchase or lease of a vehicle. And the fact that a loan is secured by a car, by itself, does not make the loan a vehicle ownership expense.

The Debtors argue that the Court is not bound by the I.R.S. manual, or, at the least, that the Court should adopt the broadest definition of ownership expense, found in § 5.15.1.7, which

---

[6] 11 U.S.C. § 707(b)(2).
[7] Although the standard vehicle ownership deduction (currently $496) is uniform across the nation, the provisions related to the vehicle ownership expense are dealt with in the section of the I.R.S. Manual dealing with Local Standards.
[8] Emphasis added to each section quoted.

3

refers to "loan" payments without qualification. In support, the Debtors point to the Court's opinion in *In re Schultz*, wherein the Court declined to incorporate the older vehicle expense contained in § 5.15.1.9.[9] According to the Debtors, if the Court disregards § 5.15.1.9 for one purpose, the Court should disregard it for all purposes.

The Court declines the Debtors' suggestion for several reasons. First, *Schultz* does not stand for the proposition that the I.R.S. Manual should be disregarded as an interpretive tool; it simply draws a line between its use as an interpretive aid and its use to recognize a deduction not present in the National and Local Standards.[10] Second, the Debtor ignores the more specific definition of ownership expenses, contained in § 5.8.5.20.3, which explicitly limits them to expenses "for purchase or lease of a vehicle."[11] And finally, the Debtors simply make too much of the variation in language between § 5.15.1.7 and § 5.15.1.9. Considering the presence of the "purchase or lease" language in § 5.8.5.20.3 as well as § 5.15.1.9, the difference between § 5.15.1.7 and § 5.15.1.9 is more likely the result of oversight than an intent to broaden the scope of loans encompassed by ownership expenses.

In sum, the Court holds that the vehicle ownership expense established by the I.R.S. and incorporated into the means test (§707(b)(2)) and, by extension, the calculation of disposable income under §1325(b), refers solely to expenses related to the purchase or lease of a vehicle. Therefore, the Debtors cannot claim a vehicle ownership expense based on the $513 Quick Cash loan obtained for purposes wholly unrelated to the purchase or lease of the 2004 Toyota Tacoma.

**B.      The Plan violates 11 U.S.C. § 1325(a)(3).**

Section 1325(a)(3) requires that a plan must have "been proposed in good faith and not by any means forbidden by law." The term "good faith" is not defined in the Bankruptcy Code or its legislative history; its definition has been developed through case law. To determine whether a plan has been proposed in good faith, courts in this jurisdiction apply a "totality of the circumstances" test,[12] with particular attention paid to whether a debtor has stated his debts and expenses accurately, whether he has made any fraudulent misrepresentation to mislead the bankruptcy court, and whether he has unfairly manipulated the Bankruptcy Code.[13]

The Trustee does not contend that the Debtors failed to accurately state their debts or expenses or that they made any fraudulent misrepresentations; the Trustee's sole contention is that the Debtors unfairly manipulated the Bankruptcy Code by incurring a relatively insignificant secured debt for the sole purpose of taking a vehicle ownership deduction and thereby reducing

---

[9] *In re Schultz*, 463 B.R. at 495-96.
[10] *In re Schultz*, 463 B.R. at 495.
[11] *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 385, 112 S.Ct. 2031("[I]t is a commonplace of statutory construction that the specific governs the general").
[12] *U.S. v. Estus* (*In re Estus*), 695 F.2d 311, 316 (8th Cir.1982).
[13] *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226-27 (8th Cir.1987) (quoting *Estus*, 695 F.2d at 316).

their disposable income to zero.  In support of this contention, the Trustee points to the Debtors' admissions that the loan is unrelated to the purchase or lease of the car and that they had sufficient cash on hand (or in the bank) to pay the expense for which the loan was allegedly obtained.

The Court agrees with the Trustee that the Debtors' First Amended Plan, which pays nothing to the unsecured creditors as a consequence of the improperly claimed vehicle ownership expense, constitutes an unfair manipulation of the Bankruptcy Code.

Notably, this ruling does not penalize the Debtors for taking out a small loan on the eve of bankruptcy; neither the Trustee nor the Court has questioned the deduction claimed by the Debtors for the repayment of that loan. The necessity of the loan is questionable, inasmuch as the Debtors appear to have had other liquid assets on the date of filing, and the Debtors' conduct doesn't reflect well on their credibility, inasmuch as they represented to the creditor that they had no intention of filing bankruptcy when they obtained the loan. But it isn't the loan itself that shows a lack of good faith; the indicium of bad faith is obtaining a loan four days before filing a Chapter 13 bankruptcy petition and then claiming a $486.55 vehicle ownership expense, despite the fact that the loan has nothing to do with the ownership (*i.e.*, purchase or lease) of the vehicle.

## CONCLUSION

For the reasons stated above, the Court finds that the Debtors' First Amended Chapter 13 plan violates § 1325(a)(3) and (b).  Therefore, the Trustee's Motion to Deny Confirmation of the Debtors' Plan is hereby GRANTED, and confirmation of the Debtors' Plan is hereby DENIED. The Debtors shall have 21 days from the date of this order within which to submit an amended plan consistent with this Memorandum Order.

So ORDERED this 1st day of August 2012.

                                                  ___/s/ Jerry W. Venters_____
                                                  HONORABLE JERRY W. VENTERS
                                                  UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed conventionally
or electronically to the counsel of record.